CA 22-50160
21-CR-00293-SB
(Central District of California)

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

MAHSA PARVIZ,

        Defendant - Appellant.

---

APPELLANT'S FURTHER EXCERPTS OF RECORD
**Volume 1 of 1**

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

HONORABLE STANLEY BLUMENFELD, JR.
UNITED STATES DISTRICT COURT JUDGE

Karyn H. Bucur, Esq.
24881 Alicia Parkway, E193
Laguna Hills, California 92653
(949) 472-1092
khbucur@cox.net
Attorney for Appellant
Ms. Mahsa Parviz

<u>TABLE OF CONTENTS</u>

**Volume One of One**

<u>Judgment and Commitment Order</u>
Docket No. 121 (Filed July 12, 2022) ........................................................................... 3

<u>Reporter's Transcript</u> (Sentencing Hearing)
Docket No. 148  (Dated July 12, 2022) ........................................................................ 8

<u>Defendant's Sentencing Memorandum</u>
Docket No. 113  (Filed June 30, 2022) ........................................................................ 45

<u>Excerpt of Reporter's Transcript</u> (Partial testimony of Arthur James Jumper)
Docket No.  142  (Dated December 15, 2022) ............................................................ 51

<u>Indictment</u>
Docket No. 1 (Dated June 22, 2021) ........................................................................... 54

**United States District Court**
**Central District of California**

**JS-3**

cc: USM; BOP; USPO

| | |
|---|---|
| **UNITED STATES OF AMERICA vs.** | **Docket No.**      2:21-cr-00293-SB-1 |

**Defendant**      Mahsa Parviz (#54652-509)

Mahsa A. Parvizkyavi, Mahsa Masokhyavi, Mahsa
Parviz Khyavi, Mahsa Parviz Khuavi, Maryam
akas:      Farahmand

**Social Security No.**  7  4  4  6

(Last 4 digits)

<div style="background:black;color:white;text-align:center">

**JUDGMENT AND PROBATION/COMMITMENT ORDER**

</div>

In the presence of the attorney for the government, the defendant appeared in person on this date.

| MONTH | DAY | YEAR |
|---|---|---|
| **July** | **12** | **2022** |

| **COUNSEL** | **Ken Behzadi, Retained** |
|---|---|
| | (Name of Counsel) |

| **PLEA** | [X] **GUILTY,** and the court being satisfied that there is a factual basis for the plea. | [ ] **NOLO CONTENDERE** | [ ] **NOT GUILTY** |
|---|---|---|---|

| **FINDING** | There being a verdict of **GUILTY** on December 16, 2021, defendant has been convicted as charged of the offense(s) of: **False Statement in a Passport Application in violation of 18 U.S.C. § 1542, as charged in Count One of the Indictment; Aggravated Identity Theft in violation of 18 U.S.C. § 1028A(a)(1), as charged in Count Two of the Indictment.** |
|---|---|

| **JUDGMENT AND PROB/ COMM ORDER** | The Court asked whether there was any reason why judgment should not be pronounced. Because no sufficient cause to the contrary was shown, or appeared to the Court, the Court adjudged the defendant guilty as charged and convicted and ordered that: **Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court the defendant is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a total term of 61 months: 37 Months as to Count One and 24 Months as to Count Two, to be served consecutively.** |
|---|---|

Upon release from imprisonment, the defendant shall be placed on supervised release for three years as to Count One and one year as to Count two, to be served concurrently, for a total term of **three years** under the following terms and conditions:

1.   The defendant shall comply with the rules and regulations of the United States Probation & Pretrial Services Office and Second Amended General Order 20-04.

2.   During the period of community supervision, the defendant shall pay the special assessment in accordance with this judgment's orders pertaining to such payment.

3.   The defendant shall cooperate in the collection of a DNA sample from the defendant.

4.   The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from custody and at least two periodic drug tests thereafter, not to exceed eight tests per month, as directed by the Probation Officer.

5.   The defendant shall participate in mental health treatment, which may include evaluation and counseling, until discharged from the program by the treatment provider, with the approval of the Probation Officer.

6.   As directed by the Probation Officer, the defendant shall pay all or part of the costs of the Court-ordered treatment to the aftercare contractors during the period of community supervision. The defendant shall provide payment and proof of payment as directed by the Probation Officer. If the defendant has no ability to pay, no payment shall be required.

7.   The defendant shall truthfully and timely file and pay taxes owed for the years of conviction and shall truthfully and timely file and pay taxes during the period of community supervision. Further, the defendant shall show proof to the Probation Officer of compliance with this order.

USA vs.   Mahsa Parviz (#54652-509)                                     Docket No.:   2:21-cr-00293-SB-1

8.   The defendant shall not obtain or possess any driver's license, Social Security number, birth certificate, passport, or any other form of identification in any name, other than the defendant's true legal name, nor shall the defendant use, any name other than the defendant's true legal name without the prior written approval of the Probation Officer.

9.   The defendant shall submit the defendant's person, property, house, residence, vehicle, papers, computers, cell phones, other electronic communications or data storage devices or media, email accounts, social media accounts, cloud storage accounts, or other areas under the defendant's control, to a search conducted by a United States Probation Officer or law enforcement officer. Failure to submit to a search may be grounds for revocation. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. Any search pursuant to this condition will be conducted at a reasonable time and in a reasonable manner upon reasonable suspicion that the defendant has violated a condition of his supervision and that the areas to be searched contain evidence of this violation.

10.   The defendant shall not contact her biological daughter C.P., by any means, including in person, by mail or electronic means, or via third parties. Further, the defendant shall always remain at least 100 yards from C.P. If any contact occurs, the defendant shall immediately leave the area of contact and report the contact to the Probation Officer.

It is ordered that the defendant shall pay to the United States a special assessment of $200, which is due immediately. Any unpaid balance shall be due during the period of imprisonment, at the rate of not less than $25 per quarter, and pursuant to the Bureau of Prisons' Inmate Financial Responsibility Program.

Pursuant to Guideline Section 5E1.2(a), all fines are waived as the Court finds that the defendant has established that she is unable to pay and is not likely to become able to pay any fine.

The Court authorizes the Probation Officer to disclose the Presentence Report, and any previous mental health evaluations or reports, to the treatment provider. The treatment provider may provide information (excluding the Presentence report), to State or local social service agencies (such as the State of California, Department of Social Service), for the purpose of the client's rehabilitation.

Defendant informed of her right to appeal.

The Court, having issued no preliminary order of forfeiture, dismisses any pending forfeiture allegations within the underlying indictment.

The Court, having found the U.S. Probation Office acknowledged an error in paragraph fifteen of the Presentence Report, denies the Government's motion for the U.S. Probation Office to further revise the Presentence Report as the U.S. Probation Office has acknowledged their error in the Addendum. Dkt. No. 119.

The Court reiterates the importance of compliance with Supervised Release Condition 10 as stated on the record. But the Court declines the Government's request to modify Condition 10 to include unspecified caregivers as unnecessary because the condition bars direct or indirect contact with CP (and the Government has not shown that the kidnapping case in Texas did not result in a protective order in favor of specified caregivers).

The Court, having heard no motion to the Court for designation of the Defendant, declines to recommend a designation for her term of imprisonment at this time.

In addition to the special conditions of supervision imposed above, it is hereby ordered that the Standard Conditions of Probation and Supervised Release within this judgment be imposed. The Court may change the conditions of supervision, reduce or extend the period of supervision, and at any time during the supervision period or within the maximum period permitted by law, may issue a warrant and revoke supervision for a violation occurring during the supervision period.

July 12, 2022
Date

Hon. Stanley Blumenfeld, Jr.
U. S. District Judge

USA vs.   Mahsa Parviz (#54652-509)                                          Docket No.:   2:21-cr-00293-SB-1

It is ordered that the Clerk deliver a copy of this Judgment and Probation/Commitment Order to the U.S. Marshal or other qualified officer.


Clerk, U.S. District Court


July 12, 2022                          By _____
Filed Date                                 Jennifer Graciano
                                           Deputy Clerk


The defendant must comply with the standard conditions that have been adopted by this court (set forth below).

### STANDARD CONDITIONS OF PROBATION AND SUPERVISED RELEASE

While the defendant is on probation or supervised release pursuant to this judgment:

1. The defendant must not commit another federal, state, or local crime;
2. The defendant must report to the probation office in the federal judicial district of residence within 72 hours of imposition of a sentence of probation or release from imprisonment, unless otherwise directed by the probation officer;
3. The defendant must report to the probation office as instructed by the court or probation officer;
4. The defendant must not knowingly leave the judicial district without first receiving the permission of the court or probation officer;
5. The defendant must answer truthfully the inquiries of the probation officer, unless legitimately asserting his or her Fifth Amendment right against self-incrimination as to new criminal conduct;
6. The defendant must reside at a location approved by the probation officer and must notify the probation officer at least 10 days before any anticipated change or within 72 hours of an unanticipated change in residence or persons living in defendant's residence;
7. The defendant must permit the probation officer to contact him or her at any time at home or elsewhere and must permit confiscation of any contraband prohibited by law or the terms of supervision and observed in plain view by the probation officer;
8. The defendant must work at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons and must notify the probation officer at least ten days before any change in employment or within 72 hours of an unanticipated change;

9. The defendant must not knowingly associate with any persons engaged in criminal activity and must not knowingly associate with any person convicted of a felony unless granted permission to do so by the probation officer. This condition will not apply to intimate family members, unless the court has completed an individualized review and has determined that the restriction is necessary for protection of the community or rehabilitation;
10. The defendant must refrain from excessive use of alcohol and must not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician;
11. The defendant must notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer;
12. For felony cases, the defendant must not possess a firearm, ammunition, destructive device, or any other dangerous weapon;
13. The defendant must not act or enter into any agreement with a law enforcement agency to act as an informant or source without the permission of the court;
14. The defendant must follow the instructions of the probation officer to implement the orders of the court, afford adequate deterrence from criminal conduct, protect the public from further crimes of the defendant; and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

USA vs.   Mahsa Parviz (#54652-509)                         Docket No.:    2:21-cr-00293-SB-1

☐ The defendant must also comply with the following special conditions (set forth below).

**STATUTORY PROVISIONS PERTAINING TO PAYMENT AND COLLECTION OF FINANCIAL SANCTIONS**

The defendant must pay interest on a fine or restitution of more than $2,500, unless the court waives interest or unless the fine or restitution is paid in full before the fifteenth (15th) day after the date of the judgment under 18 U.S.C. § 3612(f)(1). Payments may be subject to penalties for default and delinquency under 18 U.S.C. § 3612(g). Interest and penalties pertaining to restitution, however, are not applicable for offenses completed before April 24, 1996. Assessments, restitution, fines, penalties, and costs must be paid by certified check or money order made payable to "Clerk, U.S. District Court." Each certified check or money order must include the case name and number. Payments must be delivered to:

United States District Court, Central District of California
Attn: Fiscal Department
255 East Temple Street, Room 1178
Los Angeles, CA 90012

or such other address as the Court may in future direct.

If all or any portion of a fine or restitution ordered remains unpaid after the termination of supervision, the defendant must pay the balance as directed by the United States Attorney's Office. 18 U.S.C. § 3613.

The defendant must notify the United States Attorney within thirty (30) days of any change in the defendant's mailing address or residence address until all fines, restitution, costs, and special assessments are paid in full. 18 U.S.C. § 3612(b)(l)(F).

The defendant must notify the Court (through the Probation Office) and the United States Attorney of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay a fine or restitution, as required by 18 U.S.C. § 3664(k). The Court may also accept such notification from the government or the victim, and may, on its own motion or that of a party or the victim, adjust the manner of payment of a fine or restitution under 18 U.S.C. § 3664(k). See also 18 U.S.C. § 3572(d)(3) and for probation 18 U.S.C. § 3563(a)(7).

Payments will be applied in the following order:

1. Special assessments under 18 U.S.C. § 3013;
2. Restitution, in this sequence (under 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid):
   Non-federal victims (individual and corporate),
   Providers of compensation to non-federal victims,
   The United States as victim;
3. Fine;
4. Community restitution, under 18 U.S.C. § 3663(c); and
5. Other penalties and costs.

**CONDITIONS OF PROBATION AND SUPERVISED RELEASE PERTAINING TO FINANCIAL SANCTIONS**

As directed by the Probation Officer, the defendant must provide to theProbation Officer: (1) a signed release authorizing credit report inquiries; (2) federal and state income tax returns or a signed release authorizing their disclosure and (3) an accurate financial statement, with supporting documentation as to all assets, income and expenses of the defendant. In addition, the defendant must not apply for any loan or open any line of credit without prior approval of the Probation Officer.

When supervision begins, and at any time thereafter upon request of the Probation Officer, the defendant must produce to the Probation and Pretrial Services Office records of all bank or investments accounts to which the defendant has access, including any business or trust accounts. Thereafter, for the term of supervision, the defendant must notify and receive approval of the Probation Office in advance of opening a new account or modifying or closing an existing one, including adding or deleting signatories; changing the account number or name, address, or other identifying information affiliated with the account; or any other modification. If the Probation Office approves the new account, modification or closing, the defendant must give the Probation Officer all related account records within 10 days of opening, modifying or closing the account. The defendant must not direct or ask anyone else to open or maintain any account on the defendant's behalf.

The defendant must not transfer, sell, give away, or otherwise convey any asset with a fair market value in excess of $500 without approval of the Probation Officer until all financial obligations imposed by the Court have been satisfied in full.

These conditions are in addition to any other conditions imposed by this judgment.

USA vs. __Mahsa Parviz (#54652-509)__                    Docket No.: __2:21-cr-00293-SB-1__

---

**RETURN**

I have executed the within Judgment and Commitment as follows:

Defendant delivered on _____ to _____

Defendant noted on appeal on _____

Defendant released on _____

Mandate issued on _____

Defendant's appeal determined on _____

Defendant delivered on _____ to _____

at _____

the institution designated by the Bureau of Prisons, with a certified copy of the within Judgment and Commitment.

United States Marshal

_____            By  _____
Date                                                   Deputy Marshal

**CERTIFICATE**

I hereby attest and certify this date that the foregoing document is a full, true and correct copy of the original on file in my office, and in my legal custody.

Clerk, U.S. District Court

_____            By  _____
Filed Date                                             Deputy Clerk

---

**FOR U.S. PROBATION OFFICE USE ONLY**

Upon a finding of violation of probation or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

These conditions have been read to me.  I fully understand the conditions and have been provided a copy of them.

(Signed) _____        _____
Defendant                                                                          Date

_____        _____
U. S. Probation Officer/Designated Witness                             Date

---

1               UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3      HONORABLE STANLEY BLUMENFELD, JR., U.S. DISTRICT JUDGE

4

5   UNITED STATES OF AMERICA,              )
                                           )
6                        Plaintiff,        ) CASE NO.
                                           ) 21-CR-293
7            vs.                           )
                                           )
8   MAHSA PARVIZ,                          )
                                           )
9                        Defendant.        )
    _____)
10

11

12

13

14            REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                 TUESDAY, JULY 12, 2022

16                       7:59 A.M.

17               LOS ANGELES, CALIFORNIA

18

19

20

21

22   _____

23            MAREA WOOLRICH, CSR 12698, CCRR
              FEDERAL OFFICIAL COURT REPORTER
24          350 WEST FIRST STREET, SUITE 4311
             LOS ANGELES, CALIFORNIA 90012
25               mareawoolrich@aol.com

1                    **APPEARANCES OF COUNSEL:**

2

3   **FOR PLAINTIFF:**

4       OFFICE OF THE UNITED STATES ATTORNEY
        By:  Jenna Long
5       -and- Kathrynne Seiden
        Assistant United States Attorneys
6       312 North Spring Street
        Los Angeles, CA 90012
7

8

9   **FOR DEFENDANT:**

        LAW OFFICES OF KEN K. BEHZADI
10      By:  Ken K. Behzadi
        400 Corporate Pointe, Suite 300
11      Culver City, CA 90230

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

3

```
1        LOS ANGELES, CALIFORNIA; TUESDAY, JULY 12, 2022

2                         7:59 A.M.

3                          -oOo-

4

5        THE COURTROOM DEPUTY:  Calling Item 1, Case No.

6  21-CR-293, United States of America versus Mahsa Parviz.

7        Counsel, please state your appearance, starting with

8  the government.

9        MS. LONG:  Good morning, Your Honor.  Jenna Long and

10  Kathrynne Seiden appearing on behalf of the United States.

11        THE COURT:  Good morning.

12        MR. BEHZADI:  Good morning, Your Honor.  Ken Behzadi

13  on behalf of Ms. Parviz.  She's present in court.

14        THE COURT:  Good morning.

15        This matter is here for sentencing.  And the

16  defendant was convicted on December 16th of 2021, pursuant to a

17  jury verdict on Counts 1 and 2.

18        First let me ask the government whether they have

19  complied with the Crime Victims' Rights Act.

20        MS. LONG:  We have, Your Honor.

21        THE COURT:  And does any victim wish to address the

22  Court here this morning?

23        MS. LONG:  No, Your Honor.  As explained in the

24  government's sentencing position, one of the victims which

25  would be the foster mother of the child at the time of the
```

**UNITED STATES DISTRICT COURT**

4

1  commission of the crime elected not to impart out of fear for

2  retaliation.

3          THE COURT:  Okay.  And I believe she did provide the

4  Court with -- oh, no, she did not provide a letter.  You just

5  described it to the Court.

6          MS. LONG:  Correct, Your Honor, and some of her

7  statement is included in a declaration.

8          THE COURT:  All right.  And in that regard, the

9  Court did review all of the papers that were submitted to it,

10  including the presentence report as revised, the addendum to

11  the presentence report, as well as the recommendation.  The

12  Court also has received and reviewed the government's position

13  paper along with the attachments.

14          I also have reviewed the defense position paper

15  along with the attachments which include a report from

16  Dr. Saint Martin, some medical records dating back to 2016, as

17  well as some letters from family, friends, and others in

18  support.

19          I also did receive and review this morning a letter

20  of acceptance from the Watts Up, W-a-t-t-s, Watts Up Community

21  Development Corporation.  And this is a sober living facility

22  in Los Angeles, and the program director notes that Ms. Parviz

23  would be welcomed to that facility, which I will address in a

24  bit.

25          But that doesn't appear to the Court to be a viable

 1  option in light of the fact that probation is not an option

 2  here nor would it be appropriate, even if it were an option

 3  here.  But more to be said on that.

 4          First of all, the Court did review some objections

 5  that were provided by the defense in the position papers.  And,

 6  Mr. Behzadi, I want to make sure that the objections that the

 7  Court is reviewing and considering this morning are those that

 8  you filed on behalf of your client, Ms. Parviz.  Is that

 9  correct?

10          MR. BEHZADI:  That's correct, Your Honor.

11          THE COURT:  In other words, as I'm sure you are

12  aware, Mr. Lessem, L-e-s-s-e-m, a while ago submitted

13  objections when he was counsel of record, and there were a

14  number of objections, including objections that no longer, I

15  think, apply, regarding the failure to interview your client.

16          So those objections are not before me.  Your

17  objections are.  Is that correct, Mr. Behzadi?

18          MR. BEHZADI:  Yes, Your Honor.

19          THE COURT:  So I do want to turn to those objections

20  in a moment, as well as the government's position about a

21  four-level increase or departure and variance.

22          But before I get there, let me ask the government.

23  With regard to forfeiture, there was a forfeiture allegation in

24  the indictment, which I also, of course, have read.  The

25  government is not pursuing forfeiture in this matter; correct?

**UNITED STATES DISTRICT COURT**

6

```
 1              MS. LONG:  Correct, Your Honor.
 2              THE COURT:  All right.  So the record is clear,
 3   there was no preliminary order of forfeiture, and the Court is
 4   dismissing any forfeiture allegation in the indictment.
 5              Now, I do want to turn to the issues raised by the
 6   parties concerning the appropriate guideline range here and
 7   whether the Court should deviate either up or down.
 8              The parties don't dispute the sentencing guideline
 9   range as presented by the probation department.  Am I correct
10   with regard to that point for the government?
11              MS. LONG:  Yes, Your Honor, you are.
12              THE COURT:  And Mr. Behzadi?
13              MR. BEHZADI:  Yes, Your Honor.
14              THE COURT:  Mr. Behzadi, I overlooked an issue.  I
15   want to make sure that you, in fact, have reviewed carefully,
16   as I believe you have, the presentence report as revised along
17   with the addendum.
18              MR. BEHZADI:  I have, Your Honor.
19              THE COURT:  And you've also had your client review
20   it and discussed it thoroughly with her?
21              MR. BEHZADI:  I have, Your Honor.
22              THE COURT:  Ms. Parviz, is that correct?
23              THE DEFENDANT:  I believe so.
24              THE COURT:  And so with regard to the government's
25   position, the government is recommending that the Court
```

**UNITED STATES DISTRICT COURT**

1   increase the guideline range which, according to the probation

2   report, or the PSR, I should say, should be a total offense

3   level of 12, and that is based upon a calculation of a base

4   offense level of 8 with a four-level increase for the specific

5   offense characteristics.

6          The Criminal History Category is VI based upon a

7   calculation of 15 points.  And the guideline range for the

8   total offense level and criminal history for Count 1 is 30 to

9   37 months.  Count 2 is a required 24-month consecutive

10  sentence.  The guideline range for the supervised release for

11  Count 1 is one to three years, and for Count 2 it's a year.

12  The fine range is $5,500 to $55,000.  There's a mandatory

13  special assessment of $200.

14         And the Court incidentally does find that the report

15  is accurate with respect to its calculations, and the Court

16  generally does incorporate or accept the presentence report.

17         The government claims that the Court should increase

18  by four levels based upon the following sentencing guideline

19  provisions:  5K2.0, 5K2.21 and 5K2.9, which they claim would

20  then increase the guideline range to 70 to 81 months.  And they

21  are recommending an 81-month sentence calculated for Count 1

22  for 57 months and Count 2 for a consecutive 24 months for a

23  total of 81 months.

24         And when I say 70 to 81 months, I'm referring to it

25  being all in for both of those counts.

8

```
 1          The defendant objects to an upward departure or

 2    variance and claims that, first of all, contrary to the

 3    position of the probation department, the Court should not

 4    depart upward under 5K2.9 for criminal purpose, and, in fact,

 5    the defense claims that the Court should depart downward based

 6    upon several provisions.

 7          First, 5K2.13, a downward departure for mental

 8    health -- or decreased mental health capacity.  And the Court

 9    has, as I said, carefully reviewed Dr. Saint Martin's report.

10          The Court notes that Application Note 1 states that

11    the provision would apply if the defendant has significantly

12    reduced mental capacity.  And that is defined, essentially, as

13    the defendant has a significantly impaired ability to either

14    understand the wrongfulness of the behavior comprising the

15    offense or to exercise the power of reason or to control the

16    behavior that she knows is wrongful.

17          The Court tentatively, in that regard, finds that

18    this provision does not warrant a downward departure or

19    variance.  The crime reflects a high level of functioning and

20    awareness, including the awareness of the wrongfulness of the

21    conduct as most evident from efforts to avoid capture and to

22    change her appearance.

23          Ms. Parviz went so far as to dye her hair, to wear

24    colored contact lenses and to make efforts to avoid capture

25    when she was accosted by the police when she sought to kidnap
```

**UNITED STATES DISTRICT COURT**

1   C.P.

2           Also the Court finds that, in any event, the

3   criminal history here counsels against departing as a result of

4   a concern for public safety.

5           With regard to 5K2.23, the defense argues that the

6   Court should exercise its discretion and take into account by

7   way of reduction the fact that Ms. Parviz was convicted and

8   spent time on two related charges:  The first being attempted

9   kidnapping or kidnapping in Texas, and the other having to do

10  with tampering with a government record.

11          I'm going to want to hear from the parties on this.

12  But let me just at least give the benefit of the Court's

13  tentative thinking.  It's that, first of all, there's no

14  question that under 5K2.23, this is a discretionary matter

15  whether the Court would apply this departure or variance.

16          And it does appear to the Court that the kidnapping

17  is, in fact, relevant conduct.  I note incidentally that the

18  government did not address any of these issues.

19          And it appears to the Court that tampering would not

20  constitute relevant conduct.  The kidnapping was the object, as

21  everyone acknowledges, or at least the government does, of the

22  engagement in the crimes at issue here:  Count 1, false

23  statement in a passport application; and Count 2 for aggravated

24  identity theft.  And so it does appear to the Court that

25  there's a reasonable argument that the kidnapping is relevant

 1   conduct here.

 2          Having said that, the Court is not inclined to

 3   exercise its discretion to take into account and offset the

 4   time she spent which was 500 days or approximately 1.64 months

 5   in custody for reasons I'll explain in a moment.

 6          The defense also raises Section 4A1.3 which would

 7   provide for a departure or variance if there's reliable

 8   information that the criminal history of the defendant

 9   overstates the seriousness of that criminal history or

10   overstates the propensity or likelihood of the defendant to

11   commit other crimes.

12          The Court has not been presented with any credible

13   or reliable information that her criminal history somehow

14   overstates those concerns.  The Court believes quite to the

15   contrary for reasons I will further explain.

16          Also, Ms. Parviz, through her counsel, is requesting

17   that the Court provide a two-level downward variance under

18   Section 3E1.1 for acceptance of responsibility.  According to

19   the application notes, acceptance of responsibility under 3E1.1

20   is generally inapplicable when the government is put to the

21   burden of proof at trial which occurred here.  That isn't

22   disqualifying.

23          It is certainly within the realm of factual

24   possibility that acceptance of responsibility nonetheless would

25   apply.

**UNITED STATES DISTRICT COURT**

1          This is not such a case.  The Court does not
2    believe, having an opportunity to observe Ms. Parviz over a
3    number of occasions -- on a number of occasions and over the
4    course of time, that she has expressed a sincere acceptance of
5    responsibility in this matter.  So the Court has no intention
6    of varying for acceptance of responsibility.
7          But what I do want to hear from the parties -- and
8    you can be heard on anything the Court has stated thus far --
9    but particularly whether the Court should either provide
10   Ms. Parviz with credit for having served a sentence for
11   kidnapping or attempted kidnapping, whatever the specific
12   charge was in Texas, or whether I should increase her sentence,
13   either depart upward or vary upward, because the object of this
14   crime was kidnapping which undoubtedly makes the seriousness of
15   this offense more substantial.
16         So let me start by hearing from the government.  It
17   seems to me that's a fairly obvious tension between the
18   parties, and it seems to me, Ms. Long, if you are the one
19   that's arguing this, that the government simply doesn't address
20   that at all.  So let me hear from you.
21         MS. LONG:  Would you like me to take the lectern,
22   Your Honor?
23         THE COURT:  I do.
24         MS. LONG:  Your Honor, as you accurately stated, we
25   are in agreement with the Court's understanding and what

1    probation's understanding is, which is that this kidnapping is

2    relevant conduct in the sense that it was the motivating factor

3    here.  And one of the reasons why the government hasn't

4    suggested the time credit is, in part, because of the upward

5    departure that we are suggesting, which still is a reasonable

6    sentence and, frankly, the least sentence possible to meet all

7    of the goals of Section 3553(a).

8             However, if the government had argued for the

9    cross-reference which, Your Honor, when I'm talking about the

10   cross-reference, there's a subsection of the applicable

11   guidelines in this case that would mean that the kidnapping

12   could actually become the offense level if the passport had

13   been used in the kidnapping or the attempted kidnapping.

14            THE COURT:  This was your lengthy footnote.

15            MS. LONG:  It was our lengthy footnote, Your Honor.

16            THE COURT:  I read that.  But the government simply

17   is not pursuing that.  So let me just tell you how that

18   translates in my mind.  I read it.  I understand it.  But I

19   dismiss it.

20            MS. LONG:  Understood.  The only point I would make

21   to that is that, if we had pursued that, that is where the time

22   credit likely would have been a reduction because the offense

23   level would have been calculated because of the kidnapping

24   crime, and then that 500 days should be credited to reduce it.

25            THE COURT:  Well, let me as you this.  Let's assume

 1   she had been serving time on the kidnapping in Texas at the
 2   time of sentencing.  Would I be required to offset the amount
 3   of time?
 4           MS. LONG:  No, Your Honor, you would not be required
 5   to offset the amount of time; both because this is a separate
 6   crime, the passport fraud; and you are within your discretion
 7   able to fashion a sentence that meets the aims of 3553(a)
 8   without mandatorily reducing it.
 9           THE COURT:  Well, that's true with respect 5K2.23
10   because, in fact, she was discharged from the terms of
11   imprisonment.  But doesn't the law work differently if, in
12   fact, she hasn't been discharged?
13           MS. LONG:  That is true if it were the same crime.
14   However, it would have to be part of that sentence.  And the
15   passport fraud guidelines as calculated, before the government
16   requested upward departure, does not contemplate this.  So it's
17   not a part of the crime that should be sentenced for because
18   the attempt kidnapping would only affect the actual guideline's
19   calculation before departures, if again, that cross-reference
20   applied, which it does not in all of our positions.
21           THE COURT:  Let me just suggest to you for future
22   reference, it would have been more beneficial if the government
23   would have addressed this in a reply as opposed to asking the
24   Court to accept your analysis which the Court is not fully
25   inclined to do based upon its own independent analysis of the

 1    issue.

 2            But the benefit of briefing is so that the Court

 3    isn't left to its own devices which makes it more likely that

 4    it's going to make an error.

 5            But in any event, assuming the Court has discretion,

 6    why would I exercise my discretion and enhance a sentence for

 7    kidnapping when Ms. Parviz already has been sentenced for the

 8    very kidnapping that you seek an enhancement on?

 9            MS. LONG:  Because, Your Honor, it informs her

10    motive in the underlying crime.  So here you are being asked to

11    sentence her on false statements in a passport and aggravated

12    identity theft.  These are crimes that normally wouldn't in any

13    way be related to an attempted kidnapping.

14            THE COURT:  Let's assume that everyone agrees that

15    the state Texas sentence fully captured the appropriate

16    sentencing considerations under 3553(a).  Assume that for

17    purposes of my question.  Would you argue that I still should

18    enhance her sentence here because of the kidnapping object of

19    the underlying crimes?

20            MS. LONG:  Yes, Your Honor.

21            THE COURT:  And explain how that makes any sense.

22            MS. LONG:  Even if you assume for argument purposes

23    that the kidnapping sentence or the attempted kidnapping

24    sentence in Texas met the aims for that sentence, it did not

25    contemplate the crime that we are before you today on.  This is

1   a wholly separate crime that -- wholly separate is hard to say

2   when it is, in fact, related and part of the motivation.  But

3   that is not what she was sentenced on in Texas.

4           So now evaluating this case, evaluating these

5   actions she took to facilitate that, looking at the guidelines

6   and the specified upward departure informs the Court, as it did

7   the government, that this is of concern.

8           THE COURT:  So if she had gotten 15 years for

9   kidnapping, again hypothetically -- I don't know if that was

10  even a possibility in Texas -- the government would take the

11  same position?

12          MS. LONG:  Yes, Your Honor.

13          THE COURT:  She was sentenced to life imprisonment.

14  The government would take the same position in this case?

15          MS. LONG:  Yes, Your Honor.

16          THE COURT:  All right.  So in your view, that would

17  be an appropriate and just decision in this case taking into

18  account 3553(a) factors?

19          MS. LONG:  Taking into account 3553(a) factors, yes,

20  the government's position is that an upward departure is

21  appropriate irrespective of the sentence she received in Texas.

22          THE COURT:  Anything further?

23          MS. LONG:  No, Your Honor.

24          THE COURT:  Let me hear from the defense.

25          MR. BEHZADI:  Thank you, Your Honor.

**UNITED STATES DISTRICT COURT**

1          Your Honor, the Court very aptly mentioned that
2     the -- this is discretionary under 5K2.23.  She has -- the
3     defendant has already served -- been punished for that specific
4     crime of kidnapping her own child.  She's served time on that.
5     And if we go by government's argument, she's going to be
6     punished twice for the same offense.
7          The Court, pursuant to the guidelines, has
8     discretion to depart downwards, take into consideration the
9     amount of time that she has already served for the -- for this
10    specific crime of attempted kidnapping.  And the position,
11    Your Honor, you know, we are asking for the Court to take that
12    into consideration, to give Ms. Parviz a just punishment.  And
13    that is one of the considerations of 3553, that the punishment
14    has to be just.
15         THE COURT:  And wouldn't justice suggest here that
16    the Court should neither depart upward or downward with regard
17    to the kidnapping offense?
18         MR. BEHZADI:  Your Honor, the Court could consider
19    that position.  Certainly the Court has discretion to be
20    neutral on this issue.  But certainly the guidelines allows the
21    Court to take into consideration for downward departure because
22    of her completed sentence for that related offense that the
23    AUSA is asking for upward departure.
24         THE COURT:  This is not a situation where, as I gave
25    in my hypothetical, where your client was sentenced to so much

**UNITED STATES DISTRICT COURT**

23

1  time on the kidnapping that it would be unjust for the Court

2  not to consider departing downward.  Would you agree or

3  disagree with that?

4          MR. BEHZADI:  Yes, I agree, Your Honor.

5          THE COURT:  And I'm not inclined, Counsel, to really

6  delve deeply into the Texas Court's decision here about the

7  amount of time appropriate for the kidnapping offense.  I don't

8  know what factors the Texas Court took into account.  But

9  presumably they looked at all of the type of sentencing

10  considerations that this Court would look at.

11          On the other hand, there's no question that this was

12  a very aggravated crime of unlawful or false statement in a

13  passport and aggravated identity theft.  And so with that I'll

14  give you a last word, if you wish to.  I'm hard pressed to see

15  why I would give your client credit essentially and that would

16  be fair and appropriate under the circumstances.

17          MR. BEHZADI:  Thank you, Your Honor.

18          One reason is that 5K2.23 allows the Court to take

19  that sentence and discharge prior sentence, which is related to

20  this case, into consideration for downward departure.

21          The second argument is that it would be completely

22  unfair and unjust to add that or another enhancement, whereas

23  Ms. Parviz has already been punished for that particular

24  offense that the government is requesting for enhanced

25  sentencing.

1           THE COURT:  I understand.  Let me just tie this off

2     and give you an opportunity, if you wish, to address the other

3     issues you raised and that the Court addressed.

4           As a matter of discretion, the Court is not going to

5     apply 5K2.23 in favor of Ms. Parviz.  I think on balance, I

6     agree with the defense that, as a matter of discretion, the

7     Court should not enhance her sentence as a result of the

8     kidnapping for which she did serve time.

9           But I am not persuaded that it would be just and

10    appropriate for the Court to give her credit for the time that

11    she received concerning her Texas sentence.  So that's the

12    Court's ruling with respect to 5K2.23 as a matter of discretion

13    which I understand the Court has.

14          If you wish to be heard with regard to any of the

15    other issues that you raised and the Court addressed, Counsel,

16    I'll give you that opportunity.

17          MR. BEHZADI:  Thank you, Your Honor.

18          Once again, Your Honor, pursuant to 5K2.13,

19    significantly reduced mental capacity is reason for the Court

20    to look into the circumstances of defendant's mental capacity

21    or incapacity according to Dr. Saint Martin.

22          THE COURT:  Let me ask you, if I can.  I did read

23    his report, and I read it more than once.  Not in one sitting.

24    But is there anything in there that would suggest that she had

25    a significantly reduced mental capacity within the definition

1   of 5K2.13?  Because it wasn't evident to me.

2           MR. BEHZADI:  I understand that the --

3   Dr. Saint Martin specifically did not mention that this is a

4   significantly -- reducement of capacity because he's acting as

5   a doctor and is not being a lawyer, to put the specific words

6   that the Court likes to hear if they want to -- if the Court

7   wants to take that into consideration.

8           But bipolar disorder, Your Honor, it's common

9   knowledge of the active Court to take judicial notice that

10  bipolar disorder is a major mental disorder that --

11          THE COURT:  But let me just interject, if I can,

12  Mr. Behzadi.  I've presided over I can't count how many cases

13  where defendants have had bipolar disorder, SAD, really serious

14  matters.  Those people don't simply by definition of those

15  diseases qualify for 5K2.13 departure, do they?

16          MR. BEHZADI:  Your Honor, I'm not -- I would not be

17  able to give a general opinion or answer that question because

18  I'm not aware of the -- I would only -- can tell the Court that

19  this specific disorder, mental disorder, is considered

20  significant mental disorder that would diminish mental

21  capacity.

22          And Dr. Saint Martin, in his report, has

23  specifically mentioned that it was because of her bipolar

24  disorder along with her -- and other -- borderline personality

25  disorder that caused Ms. Parviz to commit the current offenses

1    leading to all the situation that she is in right now.

2            THE COURT:  But he didn't say words to the effect

3    that she didn't understand the wrongfulness of her behavior or

4    that she was unable to control her behavior even if she knew it

5    was wrongful.

6            In fact, when I looked at the report, it

7    demonstrated that she did not suffer from serious impulse

8    control issues and the like.  There was nothing in the report

9    that I read to suggest that she did not understand the

10   wrongfulness of the behavior.  And the facts of this case would

11   contradict such a finding quite substantially.

12           MR. BEHZADI:  The fact, Your Honor, that she went

13   through sophisticated means to try to get her child back, I

14   understand that, Your Honor.  But just that what went through

15   her mind, it shows that she's not able to think rationally,

16   certainly that bipolar disorder played a significant role in

17   that decision-making process, and that's the crux of my

18   argument, Your Honor, to the Court.

19           THE COURT:  I appreciate the argument, Counsel.  Is

20   there anything further that you wish to address?

21           MR. BEHZADI:  Your Honor, she has accepted

22   responsibility.  And the -- pursuant to 3E1.1 notes, even

23   though she exercised her constitutional right to go to trial,

24   if there is -- according to the guideline notes, if the

25   defendant is -- has challenged the applicability of a

1  particular count to her situation, that gives Court discretion

2  to give her two points for reduction for acceptance of

3  responsibility.

4         And she has -- the record indicates that she did

5  object to the applicability of the second count in her --

6  during her trial and also in the Rule 29 and 31 motions that

7  was filed subsequent to her conviction.

8         THE COURT:  Anything further?

9         MR. BEHZADI:  Nothing further, Your Honor.

10         THE COURT:  Let me -- before I have you sit down,

11  let me ask you, with regard to the supervised release

12  recommendation by the probation department and the conditions,

13  my understanding is that you have no objections to those;

14  correct?

15         MR. BEHZADI:  No, Your Honor.

16         THE COURT:  Very well.  You may be seated.

17         Let me just then provide the parties with the

18  Court's tentative and the reasons for it.

19         So the Court, with regard to the respective parties'

20  positions concerning upward and downward departures and

21  variances, the Court is denying all of those requests for the

22  reasons that I have mentioned.

23         With regard to the sentencing guideline range

24  therefore, which I have consulted but do not presume that the

25  sentence suggested within the guideline range is the

1   appropriate one, the appropriate range for Count 1 is 30 to

2   37 months with a consecutive sentence of 24 months for Count 2.

3          The supervised release range for Count 1 is one to

4   three years.  For Count 2, one year.  The fine, $5,500 to

5   $55,000 with a mandatory special assessment of $200 as the

6   Court previously went through.

7          The government has recommended 81 months, as I've

8   explained.  The defense has recommended 24 months, and the

9   probation department has recommended 73 months, requesting a

10  49-month sentence on Count 1 which is approximately a

11  three-level upward variance or departure under the sentencing

12  guidelines and 24 months for Count 2.

13         The Court has considered the nature of the crime

14  itself which the Court does view to be quite serious.

15         On June 11th of 2019, Ms. Parviz unlawfully obtained

16  a passport and relatedly engaged in aggravated identity theft,

17  all as part of an elaborate scheme to kidnap the minor, C.P.

18         I have considered the history and characteristics of

19  Ms. Parviz, and that includes her family history.  She does

20  have a supportive parents -- or supportive parents.  She also

21  has a sister.  I've considered her education.  The information

22  I have is not entirely reliable, but she's clearly a bright and

23  well-educated woman.  I've considered her employment history.

24  She apparently has worked as a researcher for a couple of years

25  from 2015 to 2017.

23

1          I also have taken into account her mental health

2    issues which the Court believes are real.  The Court has not

3    discounted the fact that she suffers from mental health issues.

4    And the question is whether, for purposes of the downward

5    departure that the defense requested, she qualifies for that

6    departure.  I find that she does not for the reasons I've

7    mentioned.  However, I have taken that account with regard to

8    mitigation.

9          So I've considered the fact that she has suffered

10   from mental health issues apparently dating back to at least

11   2010 when, according to the presentence reports, there were

12   psych holds on her.  The medical records that I have received

13   shows that she clearly had mental health issues dating back at

14   least to 2016.

15         I have taken into account Dr. Saint Martin's report

16   and evaluation which does indicate that she has borderline

17   personality disorder which was exacerbated during and as a

18   result of pregnancy into a form of bipolar disorder.

19         According to Dr. Saint Martin, which I've also taken

20   into account, it appears that there was evidence of malingering

21   with regard to his evaluation.  He performed the MMPI-2-RF test

22   which demonstrated or provided evidence that the profile was

23   invalid and could not be interpreted because of what the Court

24   interprets as malingering or evidence of malingering.  But

25   there's no question, in my view, that there's information

1  that's reliable before me that she has mental health issues.

2          I balance all of that which is in mitigation against

3  the seriousness of this crime and also of particular concern

4  the seriousness of escalating criminal conduct on the part of

5  Ms. Parviz.  And I will just go through it which I think gives

6  good evidence of the Court's concern and the escalation of her

7  behavior.

8          In 2015 she was convicted of DUI, and a bench

9  warrant had to issue following that for a violation of

10  supervision.  In 2017 she was convicted of forgery, and then

11  also she violated her post-conviction supervision and was

12  sentenced to six months in jail.

13          In 2018 she was convicted of child endangerment and

14  attempted kidnapping with respect to her nephew, and she was

15  sentenced to two years in state prison.  And again she violated

16  post-conviction supervision.

17          In 2018 she was convicted of evading arrest, and

18  once again, she violated post-conviction supervision and was

19  sentenced as a result of that violation, as I understand it, to

20  six months in jail.  And this was in November of 2020.  And

21  that was for failing to perform or participate in a mental

22  health evaluation and in drug treatment program.

23          And the Court notes that while I've taken into

24  account, as generally a mitigating factor, mental health, at

25  some point the failure to participate in counseling and to get

25

1  treatment starts to at least neutralize, if not cause, mental
2  health to be potentially an aggravating factor, especially to
3  the extent that it indicates that a defendant is a threat to
4  public safety.  And the Court believes that this defendant is,
5  separate and apart from that but certainly in conjunction with
6  it, a threat to public safety.

7         And then 2019, on February 27th of 2019, she was
8  convicted of tampering with a government record, and she was
9  sentenced to 550 days in county jail, or in jail.

10        On June 11, 2019, she was convicted of -- or she
11 committed the offense that led to the convictions in this case.

12        And on August 9 of '19, she was convicted of
13 attempted kidnapping of C.P., which the Court has discussed in
14 great detail.

15        What all of that on balance means to this Court is
16 that the defendant does need to serve a substantial amount of
17 time in custody to reflect not only the seriousness of the
18 offense but also to provide -- or promote respect for the law
19 and to provide just punishment, and perhaps most significantly
20 in this Court's eyes, to deter further criminal conduct which
21 the Court is concerned about in light of her escalating
22 criminality which requires protection of the public.

23        I also have taken into account other 3553(a)
24 factors, such as the necessity to provide the defendant with
25 effective treatment programs.  In that regard, I have taken

26

1  into account the What's Up -- or "Watts Up" Community

2  Development Program.  That might be a very good program while

3  she's out on supervised release, but in my view, it should not

4  take the place of an appropriate custodial sentence.

5          As I mentioned, she is ineligible for probation.  In

6  my view, even if she were statutorily eligible under the facts

7  and circumstances of this case, it would not be appropriate.

8          I've also taken into account other types of

9  available sentences and the need to avoid sentencing disparity.

10          With all of that, the Court concludes that the

11  appropriate sentence is 61 months in custody calculated as

12  the -- 37 months, the high end of the guideline range on

13  Count 1, with a consecutive sentence of 24 months on Count 2;

14  three years of supervised release.

15          She does not have the ability to pay.  So that would

16  be waived.  And a $200 mandatory special assessment with the

17  terms and conditions identified by the probation department or

18  in the PSR recommendation I should say.

19          And the Court states that tentative.  Anyone wishes

20  to be heard, I'll hear from you now, starting with the

21  government.

22          MS. LONG:  No, Your Honor, the government doesn't

23  wish to be heard.

24          THE COURT:  Mr. Behzadi, do you wish to be heard?

25          MR. BEHZADI:  Your Honor, if I may, we are just

 1  making a last-ditch effort to the Court.  If the Court can

 2  consider the lower end of Count 1, 30 months, and add the -- of

 3  course, the 24 months mandatory minimum.  If the Court would

 4  reconsider defense request for the lower end of the Count 1

 5  guidelines range.

 6            THE COURT:  Submitted?

 7            MR. BEHZADI:  Submitted, Your Honor.

 8            THE COURT:  All right.  The Court carefully

 9  considered the appropriateness of either the low end, midrange,

10  or the high end of the range on Count 1, and the Court readily

11  concluded -- this was not something the Court struggled with,

12  frankly.  Oftentimes the Court does.  But in my view, the facts

13  and circumstances strongly warrant the high end of the

14  guideline range on Count 1 for the reasons that I mentioned.

15  And in my view, the need for deterrence and public safety are

16  quite substantial.

17            The other factors the Court has taken into account

18  also weigh in favor of this sentence.  But to me the 37 months

19  is the appropriate sentence for Count 1.

20            So with that, Counsel, does your client wish to be

21  heard before I impose sentence?

22            MR. BEHZADI:  No, she doesn't wish to be heard,

23  Your Honor.

24            MS. LONG:  Your Honor, my apologies, but a minor

25  clarification on the terms of the supervised release.  I should

1   have raised this when you asked me a moment ago.

2          THE COURT:  Yes?

3          MS. LONG:  The final condition, which is Condition

4   No. 10, specifying the defendant shall not contact her

5   biological daughter, C.P., I would ask that we amend that to

6   say "C.P. or C.P.'s caregivers."

7          As Your Honor knows from the sentencing position,

8   the defendant has a habit of harassing or going after

9   caregivers to C.P. beyond just her daughter.

10         THE COURT:  Let me hear from Mr. Behzadi on that.

11         MR. BEHZADI:  I'm sorry, Your Honor.  I was not able

12   to --

13         THE COURT:  That's fine.  Let me just repeat the

14   government's position.  So the government wishes to have 10 --

15   Condition 10 of the supervised release to extend the stay away

16   not only to C.P. but C.P.'s caregivers.  Any objection?

17         MR. BEHZADI:  Your Honor, my client objects to that.

18   She would like to have -- if possible, have contact, telephonic

19   contact, if it is allowed by the local government in Texas if

20   she wants to talk to her mother.  She's asking for her to be

21   able to communicate with her daughter, going through proper

22   channels.

23         THE COURT:  All right.  Thank you.  The Court is not

24   going to modify Condition 10 in any way except to be clear that

25   the stay away is a direct or indirect contact with C.P. which

1   means that Ms. Parviz is not permitted to contact the

2   caregivers indirectly in order to communicate with C.P.  So I

3   don't see a need to modify this term.  But it clearly is

4   warranted in light of these circumstances.  Perhaps that term,

5   more than any other term, is blatantly obvious in terms of its

6   connection to this case.

7          To the extent that the equivalent in Texas of DCFS

8   here, the Department of Child and Family Services, does allow

9   for contact, what the defense would have to do is make some

10  type of motion to this Court to see whether this Court would

11  consider a carveout with regard to this condition to permit

12  contact.

13         I'm not suggesting to anybody that I'm going to be

14  amenable to doing so.  I don't mean to suggest to anyone that I

15  won't be.  I simply am allowing the possibility that, if she

16  convinces the Department of Child and Family Services in Texas

17  to allow her to have some type of communication with C.P., that

18  will be precluded by this provision.

19         If she wishes, she could contact counsel, set up a

20  hearing before this Court while she's on supervised release to

21  request the Court to modify the condition.  That is typically

22  how this Court handles that matter -- handles such matters.

23         So with that, arraignment for judgement, time for

24  sentencing waived, there's no legal cause, Mr. Behzadi?

25         MR. BEHZADI:  No legal cause, Your Honor.

30

```
 1            THE COURT:  Anything further for the government
 2   before I pronounce sentence?
 3            MS. LONG:  Not before you pronounce sentence.  There
 4   is one more housekeeping matter we would like to take up.  I
 5   could do it now or wait.
 6            THE COURT:  Let me hear from you, please.
 7            MS. LONG:  In paragraph 15 of the sentencing report
 8   that the Court has been talking about, there is what appears to
 9   be a mistake.
10            THE COURT:  This is the reference to the plea
11   agreement?
12            MS. LONG:  Yes, Your Honor.
13            THE COURT:  All right.  I was going to mention that,
14   but it appeared to this Court that in the either revised, or
15   maybe it was the addendum to the PCR [sic], the -- I think it
16   was the amendment or the addendum to the PCR -- the probation
17   department acknowledges that there was a mistake in thinking
18   that the disposition was through some negotiated agreement as
19   opposed to a conviction.
20            So I believe that's been corrected.  But to the
21   extent that it's not been corrected, obviously she was
22   convicted by way of jury trial.
23            MS. LONG:  The government's request, Your Honor,
24   would actually be that we specifically have an order issued
25   that probation amend or correct paragraph 15.  And the
```

**UNITED STATES DISTRICT COURT**

 1   reasoning why is because you are correct, the addendum does

 2   address this.  But when the addendum addresses it, it specifies

 3   a mistake made in the prior recommendation, that the

 4   recommendation had said "plea agreement."  Paragraph 15 could

 5   be independent of that.  So --

 6           THE COURT:  What is the practical significance of it

 7   if the Court simply says that I'm adopting the report except

 8   for paragraph 15?

 9           MS. LONG:  I guess it would be specifically the last

10   sentence of paragraph 15 if you're going to say you're not

11   adopting it.  But as this Court is familiar with, the

12   presentence report follows the defendant, not just through

13   appellate proceedings but further on.  And sometimes when it's

14   corrected only on the record and not in the report, we have

15   factual issues going forward.  So for clarity's sake, we would

16   ask the report be reflected to accurately have this

17   information.

18           THE COURT:  Anything further?

19           MS. LONG:  No, Your Honor.

20           THE COURT:  I'll grant the government's request, and

21   the report should be amended to reflect the actual procedural

22   history here.

23           And so with that, the Court finds the following

24   sentence is sufficient but not greater than necessary to

25   satisfy the 3553(a) objectives.

32

1    The defendant on Count 1 is sentenced to 37 months

2    in custody followed by a consecutive sentence on Count 2 of

3    24 months for a total aggravated sentence of 61 months followed

4    by supervised release on Count 1 of three years and on Count 2

5    of one year.  It's a concurrent term.  So the total amount of

6    time for supervised release is three years.

7    The Court finds without objection that the period of

8    supervision is appropriate in these circumstances.  Indeed, in

9    this Court's judgment, an even greater amount of supervised

10   release time would probably be in order as I do think

11   Ms. Parviz would benefit substantially by being on supervised

12   release.  It would address not only some issues that she has,

13   such as mental health issues, but also would be protective of

14   the public.

15   She does not have the ability to pay a fine.  So I'm

16   going to waive the fine amount.  She does have to pay the

17   mandatory special assessment at the rate of $25 per quarter

18   pursuant to the prison program until it's fully paid off, and

19   any balance must be paid while she's on supervised release

20   consistent with her ability to pay.

21   The conditions of supervised release will be as

22   follows without objection:

23   She must comply with the rules and regulations of

24   the probation department and the Second Amended General Order

25   20-04.

**UNITED STATES DISTRICT COURT**

1          She has to pay, as indicated, the special

2    assessment, if it is not paid off consistent with her ability

3    to pay.

4          She also must cooperate in collecting a DNA sample.

5          She's not to unlawfully use any controlled

6    substance.  And within 15 days of her release, she must submit

7    to drug testing.  And then she must thereafter submit at the

8    rate of twice per month at a minimum, no more than eight times

9    per month.

10          She is to participate in an outpatient mental health

11   treatment program including drug testing per the probation

12   department.  She's also not to use any alcohol or illicit

13   controlled substances, and she's not to abuse prescription

14   medication.

15          She does have to participate -- or strike that.  She

16   has to file and pay taxes that she might owe for the years of

17   conviction and during her supervised release and show proof to

18   the probation department.

19          She also must use only her true name.  That is,

20   she's not to possess a driver's license, social security

21   number, birth certificate, passport, or any such documents in

22   anyone else's name.

23          She's to submit her person and property to search

24   and seizure at a reasonable time and a reasonable manner on

25   reasonable suspicion that she's violated the terms and

 1   conditions of supervised release.  And then the areas that may

 2   be searched are those for which there's reasonable suspicion of

 3   evidence of a violation.

 4        Ms. Parviz is to notify any people with whom she

 5   lives of this search and seizure condition as it will

 6   potentially affect their privacy as well.

 7        She's also not to contact her biological daughter,

 8   C.P.  In fact, she's to have no contact, no direct or indirect

 9   contact, no personal, telephonic, mail, electronic

10   communication.  She has to stay at least 100 yards away from

11   C.P.

12        And what's important for you to understand,

13   Ms. Parviz, is this is, like all conditions of your supervised

14   release, significant.  But the Court will not tolerate any

15   violations of this particular condition which means you can

16   make no efforts, direct or indirect, to communicate with C.P.

17        So if, for example, you try to contact C.P. through

18   a foster parent or through a guardian or anyone else, for

19   example, that's a third-party or indirect contact, that's a

20   violation.

21        Let's say you decide you want to do something that

22   you think is nice and kind which is you want to send her a

23   birthday card.  That's a violation of this condition.  No

24   contact of any kind, for any purpose, through any means.  That

25   will be a violation of your conditions of supervised release.

**UNITED STATES DISTRICT COURT**

1          The Court also will allow the probation department

2   to disclose the PCR, as well as any mental health records, to

3   providers solely for purposes of furthering treatment.

4          And lastly, with regard to the conditions, the Court

5   intends to adopt verbatim the conditions of supervised release

6   and place them within the judgment.

7          Do you understand and accept the terms and

8   conditions of supervised release, Ms. Parviz?

9          THE DEFENDANT:  I guess so, Your Honor.

10         THE COURT:  All right.  And let me also advise you,

11  Ms. Parviz, that you do have the right to an appeal.  So if you

12  wish to appeal, you must do so within 14 days.  That is, you

13  must file a notice of appeal within 14 days of the entry of

14  judgment, which you should expect is going to occur today.  You

15  then must specify the judgment or order appealed from.

16         To the extent you don't have the ability to

17  prosecute the appeal, either to pay the filing fees or to

18  obtain necessary transcripts, you can apply for leave for

19  in forma pauperis.  And if, in fact, that application is

20  successful, you'll be relieved of your financial obligations.

21         Do you understand the rights that you have to an

22  appeal?

23         THE DEFENDANT:  I believe my attorney is working on

24  that.  So --

25         THE COURT:  You do understand?  That's my question.

**UNITED STATES DISTRICT COURT**

1          THE DEFENDANT:  Yes.  Thanks.

2          THE COURT:  Is there anything further, Mr. Behzadi,

3  for the defense?

4          MR. BEHZADI:  No, Your Honor.

5          THE COURT:  Anything further from the government

6  before we conclude this matter?

7          MS. LONG:  No, Your Honor.

8          THE COURT:  Then this matter is concluded.

9          Thank you.

10          (At 8:53 a.m. the proceedings adjourned.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

| | |
|---|---|
| 1 | **CERTIFICATE OF OFFICIAL REPORTER** |
| 2 | |
| 3 | |
| 4 | |
| 5 | I, MAREA WOOLRICH, FEDERAL OFFICIAL REALTIME |
| 6 | COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT |
| 7 | FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY |
| 8 | THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE |
| 9 | THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE |
| 10 | STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE |
| 11 | ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT |
| 12 | IS IN CONFORMANCE WITH THE REGULATION OF THE JUDICIAL |
| 13 | CONFERENCE OF THE UNITED STATES. |
| 14 | |
| 15 | |
| 16 | DATED THIS  25TH  DAY OF OCTOBER, 2022. |
| 17 | |
| 18 | |
| 19 | /S/ MAREA WOOLRICH |
| 20 | MAREA WOOLRICH, CSR NO. 12698, CCRR |
| | FEDERAL OFFICIAL COURT REPORTER |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

**UNITED STATES DISTRICT COURT**

1    Ken K. Behzadi, #164157
    400 Corporate Pointe #300
2    Culver City, CA. 90230
    Tel: 310-508-9381
3

4    Attorney for Defendant,
    MAHSA PARVIZ

5

6

7                 UNITED STATES DISTRICT COURT

8               CENTRAL DISTRICT OF CALIFORNIA

9

10    UNITED STATES OF AMERICA         NOTICE OF FILING AND SENTENCING
                              MEMORANDUM OF DEFENDANT
11             Plaintiff,             MAHSA PARVIZ

12    vs.                             DATE: July 12, 2022
                              Time: 8:30 a.m.
13    MAHSA PARVIZ                Hon. Stanley Blumenfeld, Jr.

14               Defendant.

15    _____/

16       Defendant Mahsa Parviz is before this Court for sentencing subsequent to her conviction

17 after a jury trial on counts one and two of the indictment.  The charges consisted of making a

18 false statement in a passport application in count one in violation of 18 U.S.C. 1542 and

19 aggravated identity theft in count two in violation of 18 U.S.C. 1028 A (a)(1).  Subsequent to Ms.

20 Parviz' conviction, the Court ordered the probation office to prepare a pre-sentence report (PSR).

21 The pre-sentence report (PSR), disclosed on January 26, 2022 was prepared by probation officer

22 Scott Shaffer.

23 Defendant Parviz objects to the probation officer's analysis and conclusion with respect to the

24 recommended upward departure sentence of 73 months.

25 Ms. Parviz respectfully submits that a sentence of 24 months would indeed be an appropriate and

26 reasonable sentence when the Court takes into consideration the statutory factors entailed in

27 18 U.S.C 3553 (a), 3661.

28

**THE SENTENCING GUIDELINES ARE ADVISORY, NOT MANDATORY**

The United States Supreme Court in <u>United States vs. Booker</u>, 125 S. Ct. 738 (2005), held that the U.S. Sentencing Guidelines are merely advisory in nature, and the Court must consider all of the sentencing factors enumerated in 18 U.S.C. 3553 (a), despite the fact that the Guidelines rejected or ignored these factors. The factors mentioned in 18 U.S.C. 3553 (a) directs the Court to consider: 1) the nature and the circumstances of the offense, 2) the history and the characteristics of the offender, 3) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, 4) the need to impose a punishment that reflects the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense, 5) to afford adequate deterrence, 6) to protect the public from further crimes, 7) to provide defendant with needed education , vocational training, medical care or other correctional treatment, and 8) the kinds of sentences that are available. Additionally, 18 U.S.C. 3661 provides that "no limitation shall be placed on the information concerning the background, character, and conduct of the person ... which a court... may consider for the purpose of imposing an appropriate sentence." In summary, in all cases, courts must consider all of the statutory factors, not just the Guidelines in arriving at the appropriate sentence. According to <u>Booker</u>, Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity. However, that uniformity did not consist simply of similar sentences for violation of the same statute. It consists, more importantly, of similar relationships between sentences and real conduct. Additionally, <u>Booker,</u> emphasizes that Congress sought to "provide certainty and fairness in meeting the purposes of sentencing, while avoiding unwarranted sentencing disparities ... and maintaining sufficient flexibility to permit individualized sentences when warranted."

Other statutory sections also provide the Court direction in sentencing such as the issue of "length of the term" of a prison sentence. 18 U.S.C 3582, specifically provides that the Court in determining the length of the term, shall consider factors set forth in section 3553 (a), recognizing that imprisonment is not an appropriate means of correction and rehabilitation.

The reasonableness for all sentencing decisions according to the Ninth Circuit, is an

1    abuse of discretion standard whether the sentence is inside or outside of the Guidelines.

2    United States vs. Ruff, 535 F.3d 999, 1002 (9th Cir. 2008); Gall vs. United States, 128 S. Ct.586,

3    594, 600 (2007).  In Ruff, it was held that although the court of appeals considers the totality of

4    the circumstances in reviewing a sentence, including the degree of variance for a sentence

5    imposed outside of the sentencing guidelines range, extraordinary circumstances are not needed

6    to justify a sentence outside of the guidelines range and the Court of Appeals must give due

7    deference to the District Court's decision that the sentencing factors warrant a particular

8    variance.  Furthermore in Gall, it was held that while appellate court, in reviewing

9    reasonableness of a sentence outside advisory guidelines range, may take degree of variance into

10   account and there is no rule that requires "extraordinary" circumstances to justify sentence

11   outside guidelines range.  The court in Gall, further held that the district judge may not presume

12   that guidelines range is reasonable, but must make an individualized assessment based on the

13   facts presented.

14           Probation Officer is suggesting a 73 month sentence for defendant Parviz recommending

15   an upward departure from the guideline range of 30-37 months for count 1, because of the

16   "seriousness of the offense" specifically arguing that the present crime was committed to

17   facilitate or conceal another crime namely attempted kidnaping of her child.  It is important to

18   point out that although almost all felony offenses can be considered "serious", Ms. Parviz was

19   previously charged and convicted of attempted kidnaping in state court and served approximately

20   1.7 years in prison.

21   As such she should not be punished twice for the same offense.

22                      **NATURE AND CIRCUMSTANCES OF THE OFFENSE**

23                                    **MITIGATING FACTORS**

24           The gravamen of Ms. Parviz's misdeeds resulting in violation of criminal statutes in both

25   recent state and federal courts stems from her desperation, frustration and anger that her child

26   was taken away from her custody.  According to Dr. Saint Martin (see evaluation report; Exh. #1)

27   Ms. Parviz suffers from borderline personality disorder and also bipolar disorder which is

28   considered a serious mental condition and deficiency. Dr. Saint Martin explains that defendant's

1   borderline personality disorder would not have resulted in criminal behavior if Ms. Parviz had
2   not developed a post-partum bipolar disorder (p.6).  In his psychiatric evaluation report Dr. Saint
3   Martin concludes that Ms. Parviz developed bipolar disorder after giving birth to her child.
4   According to the report the bipolar disorder exacerbated Ms. Parviz' borderline personality
5   disorder.  Additionally, Dr. Saint Martin aptly states that "Ms. Parviz' behavior from the time she
6   gave birth to up the current federal offense and continuing are attributed to an untreated bipolar
7   disorder on top of a borderline personality disorder. (p. 5).  In conclusion Dr. Saint Martin
8   strongly recommends that Ms. Parviz needs treatment for her bipolar disorder because it was
9   responsible for her criminal behavior. Pursuant to U.S. Sentencing Guidelines Sec. 5K2.13, a
10  downward departure may be warranted if, 1) the defendant committed the offense while suffering
11  from a significantly reduced mental capacity, and 2) the significantly reduced mental capacity
12  contributed substantially to the commission of the offense.  Here in the instant case, according to
13  Dr. Saint Martin defendant Parviz suffered from bipolar disorder that contributed to the
14  commission of her offenses.  It is abundantly clear that bipolar disorder is considered a serious
15  mental disorder that significantly reduces a person's mental capacity.
16  Accordingly, defendant Parviz is requesting that the Court consider her significantly reduced
17  mental capacity due to her bipolar disorder and depart downward as permitted by Sec. 5K2.13 of
18  the guidelines.
19          In 2019, prior to her arrest for the current matter, defendant Parviz was convicted in
20  Texas State Court for offenses of attempted kidnaping (her child) and tampering with
21  government documents.  She served approximately 1.7 years in prison for the offenses
22  mentioned.  The above mentioned offenses and subsequent convictions in Texas were related to
23  her child.  As such, the above mentioned state offenses should be considered relevant conduct
24  when taken into account in the present sentencing calculation.  Pursuant to sections 5K2.23
25  a downward departure may be appropriate if the defendant 1) has completed serving a term of
26  imprisonment; and 2) subsection (b) of 5G1.3 (imposition of a sentence on a defendant subject to
27  undischarged term of imprisonment) would have provided an adjustment had that completed
28  term of imprisonment been undischarged at time of sentencing for the instant offense.

1    Basically, USSG Sec. 5K2.23 mentions downward departure is appropriate even for discharged

2    or completed prior sentence as long as the prior offense is considered relevant conduct.

3              DEPARTURE BASED ON INADEQUACY OF CRIMINAL HISTORY CATEGORY

4    According to USSG Sec. 4A1.3 (b)(1) the standard for downward departure is as follows:

5    If reliable information indicates that the defendant's criminal history category substantially over-

6    represents the seriousness of the defendant's criminal history or the likelihood that the defendant

7    will commit other crimes, a downward departure may be warranted.

8    Here in this instance defendant's criminal history consisted of drunk driving, forgery,

9    endangering a child negligently, evading arrest (misdemeanor), tampering with government

10   documents and attempted kidnaping of her child.  Although it can be argued that the above

11   mentioned offenses are serious, yet none of them involved violence and the attempted kidnaping

12   conviction involved defendant trying to gain custody of her child albeit illegally and recklessly.

13   According to Dr. Saint Martin defendant Mahsa Parviz has been suffering from bipolar disorder

14   and because of her significantly diminished mental capacity due to bipolar disorder, she was

15   unable to think and act rationally at the time of committing the offenses.

16             ADJUSTMENT BASED ON ACCEPTANCE OF RESPONSIBILITY

17   In the commentary notes sec.2 of USSG Sec. 3E1.1, "conviction by trial, however, does not

18   automatically preclude a defendant from consideration for reduction.  In rare situations a

19   defendant may clearly demonstrate an acceptance of responsibility for his conduct even though

20   he exercises his constitutional right to trial.  This may occur, for example, where a defendant

21   goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., constitutional

22   challenge to a statute or a challenge to the applicability of a statute to his conduct).

23   Here in this instance, Ms. Parviz in her trial challenged the applicability of count 2, namely

24   aggravated identity theft, 18 U.S.C 1028A (a)(1) to her conduct in this case in her motions for

25   new trial and/or acquittal,  pursuant to Federal Rules of Criminal Procedure. 29 and 31.

26   Defendant Parviz has indicated to her defense counsel and probation officer in her recent

27   interview that she accepts responsibility for her conduct.  Accordingly, she is allowed a 2 point

28   deduction even though she exercised her constitutional right to trial.

1   Ms. Parviz who is currently 30 years old is asking the Court, in determining her sentence to

2   consider her non-violent criminal record, her hardship as a teenager in being sexually abused and

3   later losing custody of her child because of her bipolar disorder.  Her significantly diminished

4   mental capacity which contributed to her mental confusion and impulsive behavior led to

5   committing the charged offenses.  Ms. Parviz at this time is committed to have a productive and

6   law abiding lifestyle.  For the above reasons she urges the Court to exercise its discretion and

7   respectfully requests a sentence of no more than 24 months imprisonment.  She submits to the

8   Court that a 24 month sentence in her matter is certainly enough punishment in order to promote

9   respect for the law and to provide just punishment.

10

11   Dated: June 27, 2022

12

13                                                    Respectfully sumbitted,

14

15                                                    _____/s/_____
                                                     KEN K. BEHZADI
16                                                   Attorney for Defendant,
                                                     MAHSA PARVIZ

17

18

19

20

21

22

23

24

25

26

27

28

182

```
 1   please.
 2               (Jury enters courtroom at 1:05 p.m.)
 3               THE COURTROOM DEPUTY:  Thank you, everyone.  Please
 4   be seated.  The Judge will be right out.
 5               Please remain seated.  Come to order, this Court
 6   is now in session.
 7               THE COURT:  On the record in U.S. versus Parviz,
 8   with all present who were present before the break, including
 9   the defendant and the jury.
10               We remain in the government's case.  Please call
11   your next witness.
12               MS. LONG:  Your Honor, the government calls Arthur
13   Jumper.
14               THE COURTROOM DEPUTY:  Good afternoon, sir.  Would
15   you please come forward.
16               Sir, would you walk around to the witness
17   platform.  Sir, would you please raise your right hand to be
18   sworn?
19               (Oath was administered.)
20               THE WITNESS:  I do.
21               THE COURTROOM DEPUTY:  Thank you.  Please be seated.
22   Sir, for the record, would you please state your name and spell
23   your last name?
24               THE WITNESS:  Arthur James Jumper.  J-u-m-p-e-r.
25                       ARTHUR JAMES JUMPER,
```

**UNITED STATES DISTRICT COURT**

Case 2:21-cr-00293-SB  Document 142  Filed 10/18/22  Page 183 of 236  Page ID #:1219

183

```
 1                          having been duly sworn,
 2                          testified as follows:
 3              THE COURT:  Please continue to do as you have been,
 4      speak into the microphone.
 5              THE WITNESS:  Yes, sir.
 6              THE COURT:  Thank you, you may inquire.
 7              MS. LONG:  Thank you, Your Honor.
 8                          DIRECT EXAMINATION
 9      BY MS. LONG:
10      Q     Where are you employed?
11      A     I'm employed with the Collin County Sheriff's Office in
12      McKinney, Texas.
13      Q     Where is McKinney, Texas?
14      A     It is a city that is north of Dallas and Plano and Alan.
15      Q     How far from Dallas is McKinney?
16      A     About a 40-minute drive.
17      Q     And is McKinney, Texas, within the confines of Collin
18      County?
19      A     Yes, it is the county seat.
20      Q     How are you employed by Collin County Sheriff's Office?
21      A     I'm employed as a deputy sheriff assigned to the criminal
22      investigation division.
23      Q     What is your rank?
24      A     Corporal.
25      Q     As a deputy sheriff assigned to the criminal
```

201

```
 1   saying Exhibits 1.  Do you see that?
 2   A     I do.  I do.
 3   Q     Do you recognize that?
 4   A     Yes.
 5   Q     Is that the same passport of a minor named C.P.?
 6                 Those are the initials you recovered from the car
 7   in August of 2019?
 8   A     Yes.
 9   Q     Let's do the same thing for Exhibit 2.  Please look at
10   Exhibit 2.
11                 Do you recognize that?
12   A     Yes.
13   Q     Is that the same passport card for a minor with the
14   initials C.P. you recovered from the vehicle you searched in
15   August of 2019?
16   A     Yes.
17   Q     Did you find foreign travel documents?
18   A     Yes, I did.
19   Q     I would now like to display Exhibit 40.  What do we see
20   here?
21   A     Here, you see in the background the envelope that was
22   prepared with the barcode, so we could catalog what we're going
23   to put into it.
24                 In front of it is a passport titled Islamic
25   Republic of Iran, and some type of laminated photo ID, and then
```

UNITED STATES DISTRICT COURT

**FILED**
CLERK, U.S. DISTRICT COURT

6/22/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ JB _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2021 Grand Jury

| UNITED STATES OF AMERICA, | CR   2:21-cr-00293-DMG |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1542: False Statement in a Passport Application; 18 U.S.C. § 1028A(a)(1): Aggravated Identity Theft; 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| MAHSA PARVIZ, | |
| Defendant. | |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 1542]

On or about June 11, 2019, in Los Angeles County, within the Central District of California, defendant MAHSA PARVIZ willfully and knowingly made a false statement in an application for a United States passport, with intent to induce and secure for the use of another person the issuance of a passport under the authority of the United States, contrary to the laws regulating the issuance of such passports and the rules prescribed pursuant to such laws, in that, in such application, defendant PARVIZ stated that she was the legal

1  parent for C.P., and submitted a letter by C.P.'s purported

2  physician, B.B., claiming C.P. required emergency overseas travel for

3  medically necessary operations and could not personally appear for

4  the application process without posing an unsurmountable risk to

5  C.P.'s health, whereas, in fact, as defendant PARVIZ then knew, her

6  parental rights over C.P. had been terminated, B.B. was not C.P.'s

7  physician, C.P. did not require emergency overseas travel for

8  medically necessary operations, and C.P. could not personally appear

9  for the application process because C.P. was in the custody of the

10  State of Texas and not because there would be a risk to C.P.'s

11  health.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

COUNT TWO

[18 U.S.C. § 1028A(a)(1)]

     On or about June 11, 2019, in Los Angeles County, within the Central District of California, defendant MAHSA PARVIZ knowingly used, without lawful authority, a means of identification that defendant PARVIZ knew belonged to another person, namely, the name of victim B.B., during and in relation to the offense of False Statement in a Passport Application, a felony violation of Title 18, United States Code, Section 1542, as charged in Count One of this Indictment.

3

<div align="center">FORFEITURE ALLEGATION</div>

<div align="center">[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]</div>

1.   Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offense set forth in Count One of this Indictment.

2.   The defendant, if so convicted, shall forfeit to the United States of America the following:

(a)   All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offense; and

(b)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been

//

//

<div align="center">4</div>

1  placed beyond the jurisdiction of the court; (d) has been

2  substantially diminished in value; or (e) has been commingled with

3  other property that cannot be divided without difficulty.

4

5                              A TRUE BILL

6

7                              _____/S/_____

8                              Foreperson

9

10  TRACY L. WILKISON
    Acting United States Attorney

11

12

13  SCOTT M. GARRINGER
    Assistant United States Attorney
14  Chief, Criminal Division

15  JOSHUA O. MAUSNER
    Assistant United States Attorney
16  Deputy Chief, General Crimes
    Section
17
    SUSAN S. HAR
18  Assistant United States Attorney
    General Crimes Section
19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE

FOR DOCUMENTS FILED USING CM/ECF

I hereby certify that on November 16, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

All of the participants in this case are registered CM/ECF users. They will be served by the appellate CM/ECF system.

Dated: November 16, 2023
S/Karyn Bucur